# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| v. | CRIMINAL NO. 3:25-CR-66-CHB<br>*Filed Electronically* |
| AHYENDAY THORNTON | DEFENDANT |

## MOTION TO REOPEN DETENTION HEARING

Pursuant to Judge Boom's Order (DN18) and 18 U.S.C. § 3142(f), the United States requests that the defendant's detention hearing be reopened based on new information that was not known to the United States at the time of the hearing.

Ahyenday Thornton was indicted on April 2, 2025. The indictment alleges that between April 29, 2021, and March 1, 2023, she engaged in a scheme to defraud a number of banks by submitting false information on loan applications, such as false social security numbers and false employment information, to obtain loans to purchase luxury automobiles. Her scheme allowed her to obtain a Mercedes Benz, a Cadillac Escalade, a Porsche Macan, and a BMW Series 5. In each instance, she either made zero loan payments or only one loan payment, resulting in hundreds of thousands of dollars of losses. To date, the stolen automobiles have not been recovered.

Thornton was arrested on April 7 and had her initial appearance on April 8. The United States moved for detention, and a detention hearing was held on April 9. The United States agreed with the Probation Officer's determination that Thornton posed a risk of non-appearance due to "criminal activity while under supervision, history of failure to appear, pending charges, and pretrial, probation, parole or supervised release status and compliance," and that Thornton

1

also posed a danger to the community based on her "pretrial probation, parole, or supervised release status and compliance [and] pattern of similar criminal activity history." (Pretrial Services Report). The United States further agreed with the Probation Officer that there "is no condition or combination of conditions that will reasonably assure the appearance of the defendant as required and the safety of the community." Id.

During the detention hearing, the United States introduced a timeline[1] and additional evidence that reflected that Thornton has at least ten (10) failures to appear in court, one petition to revoke probation, and two probation revocation requests, and numerous instances of Thornton refusing to comply with the terms of her probation. In addition, Thornton has been charged with new criminal offenses seven times since June 2017, and all of the criminal activity alleged during this case occurred while she was under probation on other charges. Accordingly, the United States moved to detain Thornton pending trial.

Nonetheless, Thornton was released on home detention with electronic monitoring, and was ordered to reside at her mother's home. (DN 10). The United States has since uncovered additional evidence that makes even more plain that "no condition or combination of conditions will reasonably assure the appearance of [Thornton] as required and the safety of any other person and the community," 18 U.S.C. § 3142(e), and that Thornton should be detained pending trial.

### I. Thornton Lied to Probation Officer Rachel Waddle and Magistrate Judge Edwards

In her initial interview, Thornton lied to Probation Officer Rachel Waddle (PO Waddle) about both her residence and her employment status. Thornton told PO Waddle that she lived at her mother's house, but her brother indicated that she lives in an apartment, and at the detention

---

[1] See DN13, Exhibit A; and DN15.

2

hearing her mother testified that although she sometimes stays with her, Thornton has her own apartment.

After the detention hearing, the United States obtained a number of Thornton's jail calls. Thornton discussed lying about her residence during those calls:

- Call 1—Thornton expressed frustration that PO Waddle was told about her apartment, stating "that really almost got me remanded today . . . It really looked bad." In the same call, Thornton, who claimed at the April 9 detention hearing she needs to be with her mother to provide necessary medical care and assistance, discussed her home detention and stated "I'm going to try to see how I can get it taken off of Mom's house so I can be at my apartment, because I don't want to be there. I would rather be at my apartment."

- Call 4—Thornton, discussing her interview with PO Waddle, stated "I wanted to give them my address because of course I don't want to end up in house arrest at my mother's house, but I didn't want to give them my apartment."

Thornton also told Magistrate Judge Edwards during her April 8 initial appearance, and PO Waddle during her intake interview, that she currently works at the Fairfield Inn in Jeffersonville, Indiana. On April 10, 2025, the day after the detention hearing, the FBI contacted the Fairfield Inn and was told that Thornton is no longer employed and has not worked there for over three weeks. Thornton also discussed this lie in at least two jail calls:

- Call 1-- Thornton discussed lying about being employed because it might improve her chances of being released.

- Call 3—Thornton expressed frustration that her mother testified at the detention hearing that she saw Thornton drive a Mercedes, a Cadillac Escalade, and a Porsche, and expressed frustration that her mother also testified that she worked as a hotel manager,

3

because that statement can be verified. "I would have said I worked at the church or something, because that could be verified."²

## II. Thornton is Already Planning to Fool the Probation Officer and Violate the Conditions of Home Detention

In yet another jail call obtained subsequent to the detention hearing, Thornton, in a discussion believed to be with her brother, explained how she plans to deceive her probation officer so she can violate the terms of her home detention:

Thornton: I'm going to see how soon that I can get to Kentucky, because . . . I want my stuff to be in Kentucky, and something that I'm going to tell her [her probation officer] so that I can get out and don't have to be trapped at Mama's all day is that I do hair.

Man: (Inaudible)

Thornton: You know?

Man: It might work.

Thornton: I know. It might. It's something.³

## III. Thornton Appears to be Planning Her Next Criminal Scheme

In another jail call with a man believed to be her brother, Thornton discusses a health care fraud scheme to purchase diabetes test strips and supplies from patients or overseas suppliers and to resell them at a large mark-up.⁴ After the man claimed that they can earn "multiple thousands of dollars a day," Thornton replied "I'm interested."

---

² The United States has no reason evidence that Thornton was employed at the time of her arrest.
³ Call 5.
⁴ Call 6. See https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/doj-press-releases-involving-fda-oci/two-additional-south-florida-residents-plead-guilty-health-care-fraud-charges-diabetic-test-strip

4

## IV.     Thornton Should be Detained Pending Trial

Under the Bail Reform Act, a defendant must be detained pending trial if a judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e) (emphasis added); see also United States v. Hansen, 108 F. App'x 331, 332 (6th Cir. 2004) (noting that the requirement is not one of "guarantee," but "reasonable assurance"). In determining whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of the community, the district court considers four factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
>    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g)(1)-(4). A judge's finding that no set of conditions will reasonably assure the appearance of the person or the defendant threatens the safety of any other person in the community must be supported by clear and convincing evidence. Id. § 3142(f)(2)(B). The Court determines risk for flight by a preponderance of the evidence. United States v. Patriarca, 948

5

F.2d 789, 793 (1st Cir. 1991); United States v. Curry, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). In this case, there is a paramount risk that Thornton will not appear. Moreover, she presents a clear threat to our community, and there is a risk of flight, as she has absconded before. All of the 3142(g) factors heavily weigh in favor of detention.

While this isn't a violent offense, Thornton engaged in a brazen bank fraud scheme in which she blatantly lied on car loan applications, using false social security numbers and false employment information, resulting in several hundreds of thousands of dollars of actual and intended losses. Her fraud allowed her to obtain a Mercedes, a Cadillac, a Porsche, and a BMW, and none of those cars have been recovered. Attempts to recover those cars have been met with Thornton's threats to get a gun and shoot the repossession driver, and Thornton is still discussing hiding the cars on jail calls.[5]

The evidence against Thornton is overwhelming. It will be very easy for the United States to prove that the social security numbers she provided to the banks were not assigned to her, and that the employment information she submitted was false. Moreover, her failure to make payments on the cars, and her efforts to conceal and maintain possession of the cars, clearly demonstrates her intent to defraud.[6]

Thornton's history and characteristics are described in some detail above. She serially skips court appearances, lies to probation officers and the court, and violates the terms of her probation. All the while, she tenaciously continues to commit one crime after another without any signs of slowing, and this crime, like many of her others, was committed while she was on

---

[5] Jail Call 2, in which Thornton tells a man believed to be her brother to be careful because the government is looking for the cars.

[6] After the detention hearing the United States also discovered evidence of at least one additional fraudulently obtained loan to purchase a car.

probation. As a result of all of these facts, our community is unsafe, economically and physically, while Thornton is out of custody, and she poses an unbearable risk of non-appearance.

V.      **Conclusion**

It is clear from the record that Thornton has not and will not comply with the norms of society. She has not and will not stop committing crimes, even when under court supervision. She also has not and will not abide by the terms of her probation and release. And her track record proves conclusively that she poses an unacceptable risk of non-appearance, no matter what conditions are placed upon her. The newly discovered evidence further highlights those basic facts. Accordingly, pursuant to 18 U.S.C. § 3142(f), the United States moves to reopen the detention hearing, and requests that the court detain Thornton pending trial. The United States further requests that the court to address this motion expeditiously to prevent Thornton from further criminal activity, and from absconding or failing to appear in court.

Respectfully submitted,

MICHAEL A. BENNETT
UNITED STATES ATTORNEY

*David Weiser*
David Weiser
Assistant United States Attorney
(502) 625-7068
david.weiser@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on April 18, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system.

*David Weiser*
David Weiser
Assistant United States Attorney